UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LARRY DARNELL ARTHUR, | ) | Civil No. 06cv2455 BEN(RBB) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION RE: GRANTING MOTION TO DISMISS** |
| v. | ) | **[DOC. NO. 9]** |
| R. TORRES, Correctional Sergeant; F. GONZALEZ, Correctional Officer; J. FLORES, Correctional Officer, | ) | |
| Defendants. | ) | |

Plaintiff Larry Darnell Arthur, a state prisoner proceeding pro se and in forma pauperis, filed a civil rights Complaint [doc. no. 1] on November 7, 2006, pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants used excessive force against him in violation of the Eighth Amendment on January 7, 2006, while he was incarcerated at Calipatria State Prison. (See Compl. 1-5.)[1] Arthur is seeking compensatory, punitive, and exemplary damages. (Id. at 9-10.)

---

[1] For convenience, all page numbers refer to the electronic pagination supplied by the electronic case filing system.

On May 18, 2007, Defendants Gonzalez and Flores[2] filed a Motion to Dismiss the Complaint [doc. no. 9] with a Memorandum of Points and Authorities. Defendants assert that Plaintiff's Complaint must be dismissed because Arthur failed to exhaust his administrative remedies prior to filing suit. (Mot. to Dismiss 2.) Defendant Flores also moves to dismiss the Complaint for failure to state a claim against him. (Id.; Defs.' Mem. P. & A. 7-8.) Plaintiff submitted an Opposition to Defendants' Motion [doc. no. 13], which was filed nunc pro tunc to June 12, 2007. On September 20, 2007, District Judge Roger T. Benitez referred the Motion to this Court for a report and recommendation [doc. no. 17].

Defendants' Motion to Dismiss is suitable for decision without oral argument. See S.D. Cal. Civ. L.R. 7.1(d)(1). For the reasons set forth below, the district court should **GRANT** Defendants' Motion to Dismiss.

### I. FACTUAL BACKGROUND

Plaintiff is an inmate currently incarcerated at Centinela State Prison, but he was previously incarcerated at Calipatria State Prison. (Compl. 1; Notice of Change of Address 1 [doc. no. 15] at 1.) On January 7, 2006, Defendant Gonzalez, a Correctional Officer working at Calipatria, ordered Arthur to disrobe for a strip search. (Compl. 2-3.) The search did not uncover any contraband. (Id. at 3.) After the search, Gonzalez told Plaintiff to turn and face the wall so he could be handcuffed. (Id.) Arthur alleges he informed Gonzalez that due to a medical condition he

---

[2] Defendant Torres has not been served with a summons and Complaint. (See doc. no. 6.) Plaintiff attempted service on Torres at Calipatria State Prison, where Torres formerly worked, but was informed that Torres is no longer employed by the California Department of Corrections.

needed to be restrained in waist chains or with two sets of handcuffs. (Id.) Nevertheless, Defendants Gonzalez and Torres restrained Plaintiff with a single set of handcuffs. (Id.)

Arthur alleges that to relieve pain and pressure from his right shoulder, he asked if he could reposition his left arm. (Id. at 3-4.) Defendant Gonzalez intentionally pulled Plaintiff's left arm, causing pain to his arm and shoulder. (Id. at 4.) In reaction, Arthur moved his body to the right, at which point Defendant Gonzalez grabbed Plaintiff with both hands and slammed him to the ground. (Id.) Gonzalez then forcefully pressed his knee into Arthur's back and punched Plaintiff in the face and head. (Id.) Arthur asserts that Defendant Torres kicked him repeatedly in the face and mouth, causing serious lacerations. (Id.)

Defendants Gonzalez and Torres continued to punch, kick, and stomp on Plaintiff until Defendant Flores entered the room. (Id. at 5.) Defendant Flores asked, "What's going on?" and Torres looked up in surprise and told him to push his personal alarm. (Id.) After the alarm was activated, Defendants left Arthur on the floor until other staff arrived and took him to the emergency room. (Id.)

## II. LEGAL STANDARDS APPLICABLE TO THE FAILURE TO EXHAUST

### A. Motion to Dismiss Unexhausted Claims Pursuant to the Unenumerated Portions of Rule 12(b)

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C.A. § 1997e(a) (West 2003). The exhaustion requirement applies regardless of the relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001).

"'[A]n action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk[]' . . . ." Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004)). Therefore, prisoners must "exhaust administrative remedies before submitting any papers to the federal courts." Id. at 1048 (emphasis added).

Section 1997e(a)'s exhaustion requirement creates an affirmative defense. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "[D]efendants have the burden of raising and proving the absence of exhaustion." Id. (footnote omitted). Defendants in § 1983 actions properly raise the affirmative defense of failure to exhaust administrative remedies through an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Id.

Unlike Rule 12(b)(6) motions to dismiss for failure to state a claim for which relief may be granted, "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)). "A court ruling on a motion to dismiss also may take judicial notice of 'matters of public record.'" Hazleton v. Alameida, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)). But "if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust[,] . . . the court must assure that [the

plaintiff] has fair notice of his opportunity to develop a record." Wyatt, 315 F.3d at 1120 n.14.

"[When] the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." Id. at 1120 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d at 368 & n.3).

**B.   The Administrative Grievance Process**

"The California Department of Corrections [CDC] provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment: an informal level, a first formal level, a second formal level, and the Director's level." Vaden, 449 F.3d at 1048-49 (citing Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005)). The administrative appeal system can be found in title 15, sections 3084.1, 3084.5, and 3084.6 of the California Code of Regulations. See Brown, 422 F.3d at 929-30 (citing Cal. Code Regs. tit. 15, §§ 3084.1(a), 3084.5(a)-(b), (e)(1)-(2), 3084.6(c)).

To comply with the CDC's administrative grievance procedure, an inmate must file his grievance at the informal level "within 15 working days of the event or decision being appealed . . . ." Cal. Code Regs. tit. 15, § 3084.6(c) (2006); see also Brown, 422 F.3d at 929. An inmate must proceed through all levels of the administrative grievance process before initiating a § 1983 suit in federal court. See Vaden, 449 F.3d at 1051.

**III. THE MERITS OF THE MOTION TO DISMISS FOR FAILURE TO EXHAUST**

**A.   Judicial Notice**

Plaintiff's Opposition requests that the Court take judicial notice of four facts: (1) Defendant Torres has been terminated by

the California Department of Corrections; (2) Arthur is acting <u>pro se</u> and had no means to effect service on Defendant Torres; (3) Plaintiff is currently "on lock down" in the prison; and (4) prisoners are not privy to know the result of 602s raising staff complaints. (Opp'n 1, 3.)

The Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

The Court need not take judicial notice of any fact that is not relevant to resolving the pending Motion to Dismiss. <u>See</u> <u>Trans-Sterling, Inc. v. Bible</u>, 804 F.2d, 525, 528 (9th Cir. 1986); <u>City of Lodi v. M. & P. Invs.</u>, 308 F. Supp. 2d 1137, 1143 n.6 (E.D. Cal. 2003). Defendant Torres is not a party to this suit due to Plaintiff's failure to serve him. Nor has Torres filed a motion to dismiss or any other responsive pleading. Accordingly, the Court declines to take judicial notice of facts relating to Arthur's ability to effect service of process on Torres. Although marginally relevant, at best, the Court will judicially notice the fact that the results of any investigation into staff misconduct by the California Department of Corrections are not shared with inmates. This fact is supported by the May 8, 2006, letter from C. G. Butler, Associate Warden, to Plaintiff, which is attached as an exhibit to Plaintiff's Complaint. (Compl. Ex. B at 51.)

**B.    Defendants' Contention that Plaintiff Failed to Exhaust**

Attached to Plaintiff's Complaint are documents demonstrating his attempts to exhaust the available administrative remedies.[3] Arthur submitted an inmate grievance form (commonly known as a "602") on January 17, 2006, complaining of the January 7, 2006, attack. (Compl. Ex. B at 45); see Cal. Code Regs., tit. 15, § 3084.2(a). Administrative review of Arthur's 602 was bypassed at the informal level and forwarded directly to the first formal level of review. (See id.); Cal. Code Regs., tit. 15, § 3084.5(a)(3)(G) (stating that informal review is waived for inmate appeals alleging staff misconduct).

Correctional Lieutenant R. Din interviewed Plaintiff on February 17, 2006, about his staff complaints. (Id. at 50.) The 602 grievance was granted in part at the first level of review on May 17, 2006. (Id. at 50-51.) An inquiry was made by the prison administrators into Plaintiff's allegations of misconduct, but Arthur was informed that the results of the inquiry would not be provided to him because staff personnel matters are confidential. (Id. at 51.) Plaintiff was also informed that although he could not proceed further in the staff complaint process, he could still appeal the first level decision, and his administrative remedies would not be exhausted until he proceeded through the director's level of review. (Id.)

Arthur's 602 was returned to him on May 22, 2006. (Compl. Ex. B at 46.) Dissatisfied with the response, Plaintiff appealed the decision on the grounds that he was still in administrative

---

[3] The same documents were also submitted as Exhibit A to Plaintiff's Opposition to Defendants' Motion to Dismiss.

1  segregation, had been held there since the incident, and the
2  disciplinary report had not been expunged from his file. (Id. at
3  46, 52.)  Arthur intended to pursue his administrative remedies for
4  all these grievances to the second level. Compare (id.), with
5  Brown, 422 F.3d at 937-40. He signed the appeal on May 29, 2006,
6  and it bears a stamp indicating that it was received by the staff
7  at California State Prison, Los Angeles County (where Arthur was
8  held at the time) on June 2, 2006, and assigned on the same day.
9  (Id. at 46.)
10     Thirteen days later, on June 15, 2006, the prison's Inmate
11 Appeals Office forwarded the appeal to the staff at Calipatria
12 State Prison.  (Id. at 54.)  The appeal forms were received by the
13 Calipatria appeals office on June 23, 2006, eight days later. (Id.
14 at 45-46, 50-54.)  On July 20, 2006, the Appeals Coordinator at
15 Calipatria issued a memorandum stating that Plaintiff's appeal was
16 screened out because there was "too great a TIME LAPSE between when
17 the action or decision occurred and when [Arthur] filed [his]
18 appeal . . . ."  (Id. at 48-49.)  The memorandum was forwarded to
19 California State Prison, Los Angeles County, where the staff issued
20 another screen-out letter on August 9, 2006, repeating that
21 Plaintiff's appeal was cancelled because it was untimely. (Id. at
22 47-48.)  Arthur then filed his federal Complaint on November 11,
23 2006.
24     The PLRA's exhaustion requirement requires "proper
25 exhaustion." Woodford v. Ngo, __ U.S. __, 126 S. Ct. 2378, 2387
26 (2006).  Thus, a prisoner cannot satisfy the exhaustion requirement
27 "by filing an untimely or otherwise procedurally defective
28 administrative grievance or appeal." Id. at 2382.  Defendants

contend that Plaintiff failed to properly exhaust his administrative remedies because his 602 was denied as untimely. (Defs.' Mem. P. & A. 6.)

Arthur had fifteen working days after he received notice that his appeal was granted in part at the first level to submit his appeal to the second level of review. See Cal. Code Regs. tit. 15, § 3084.6(c). Plaintiff's 602 form bears a stamp showing that it was returned to him on May 22, 2006. (Compl. 46.) Arthur completed and signed his appeal on May 29, 2006; it was received by prison staff on June 2, 2006. (Id.) Therefore, it would appear that Plaintiff's appeal was screened out in error because it was actually submitted on time, eleven days after the first level decision was returned to him.

The California Code of Regulations describes the procedure for rejecting an appeal. "When rejecting an appeal, the appeals coordinator shall complete an Appeals Screening Form, CDC Form 695 (rev. 5-83), explaining why the appeal is unacceptable. If rejection is based on improper documentation, the form shall provide clear instructions regarding further action the inmate must take to qualify the appeal for processing." Cal. Code Regs. tit. 15, § 3084.3(d).

Both of the screen-out letters sent to Arthur on form 695 informed him of the proper procedure to follow if he believed that his 602 should not have been screened out as untimely. Both stated: "This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to

comply with the above directives." (Compl. 47, 49.) Plaintiff did not follow this procedure. Arthur had a means available to him to proceed further in the administrative process, but he chose instead to abandon his administrative appeal and file this lawsuit. This does not constitute proper exhaustion.

Plaintiff claims that his Complaint should not be dismissed for failure to exhaust because the partial grant of his 602 at the first level of review should be construed as exhaustion, especially because the remedy he was seeking (monetary damages) was not available through the prison's administrative grievance procedure. (Pl.'s Opp'n 2.) This argument is foreclosed by recent Supreme Court precedent. The Court has held that administrative remedies must be <u>properly</u> exhausted before an inmate can file suit in federal court, regardless of whether the inmate's requested remedy is available through the administrative process. <u>Booth</u>, 532 U.S. at 741 (citing <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992)). Arthur was required to pursue his grievance through the director's level of review, even if the CDC had no power to award him the monetary relief he requested, so long as some form of relief remained available. Plaintiff was advised that the partial grant of his appeal did not fully exhaust his administrative remedies, and further relief remained available to him through the administrative process. (Compl. Ex. B at 51.) He was also informed of the procedure to follow if he thought his appeal was erroneously cancelled. He did not follow these available procedures.

Arthur also alleges that his time period for submitting administrative appeals should have been extended when his 602 was

assigned a second log number. (Pl.'s Opp'n 2-3.) Plaintiff's 602 was initially given the log number CAL 06-0237. (Compl. Ex. B at 45.) When Arthur was transferred from Calipatria State Prison to California State Prison, Los Angeles County, his 602 was assigned a second log number, LAC 06-01792, at the new prison. (Id.) But Plaintiff was transferred before he was interviewed on February 17, 2006, about his appeal. (See id. at 50.) Plaintiff was not under a deadline to submit an appeal at that time, so there is no reason why assigning a second log number to track his 602 would impair Arthur's ability to comply with the applicable time restraints.

Finally, Plaintiff argues that the California Department of Corrections has a pattern of refusing to answer 602s submitted by prisoners, which limits their ability to fully exhaust administrative remedies. (Pl.'s Opp'n 2.) In this case, however, there is no allegation that Defendants failed to respond to Arthur's 602. Indeed, the record includes several staff responses. Plaintiff has not alleged any conduct by Defendants that would excuse his failure to exhaust. Cf. Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (finding prisoner had no available remedies where prison officials failed to respond to his grievances); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (holding remedies were not available where prison officials prevented prisoner from utilizing grievance system).

Defendants' Motion to Dismiss Complaint should be **GRANTED** because Plaintiff failed to exhaust all available administrative remedies before filing suit.

## IV. LEGAL STANDARDS APPLICABLE TO 12(b)(6) MOTION TO DISMISS

### A. Motions to Dismiss For Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999). A claim can only be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10 n.7 (1980) (quotations and citations omitted). The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The Court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

The Court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden

1  v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation
2  omitted); Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir.
3  1993); see also Cholla Ready Mix, 382 F.3d at 973 (citing Clegg v.
4  Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994))
5  (stating that on Rule 12(b)(6) motion, a court "is not required to
6  accept legal conclusions cast in the form of factual allegations if
7  those conclusions cannot reasonably be drawn from the facts
8  alleged[]").  "Nor is the court required to accept as true
9  allegations that are merely conclusory, unwarranted deductions of
10 fact, or unreasonable inferences."  Sprewell v. Golden State
11 Warriors, 266 F.3d 979, 988 (9th Cir. 2001).
12      In addition, when resolving a motion to dismiss for failure to
13 state a claim, the Court may not generally consider materials
14 outside the pleadings.  Schneider v. Cal. Dep't of Corrs., 151 F.3d
15 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire &
16 Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay
17 Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th
18 Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the
19 complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes
20 consideration of "new" allegations that may be raised in a
21 plaintiff's opposition to a motion to dismiss brought pursuant to
22 Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232,
23 236 (7th Cir. 1993); 2 James Wm. Moore et al., Moore's Federal
24 Practice § 12.34[2] (3d ed. 1997) ("The court may not . . . take
25 into account additional facts asserted in a memorandum opposing the
26 motion to dismiss, because such memoranda do not constitute
27 pleadings under Rule 7(a).").
28

But "[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)). The Court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); Stone v. Writer's Guild of Am. W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

These Rule 12 (b)(6) guidelines apply to Defendants' Motion to Dismiss.

**B.     Standards Applicable to Pro Se Litigants**

Where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and give the plaintiff any benefit of the doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a pro se civil rights complaint, however, the Court may not "supply essential elements of claims that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts

insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." Jones, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the Court must give a pro se litigant leave to amend his complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir. 1987). Thus, before a pro se civil rights complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies. Karim-Panahi, 839 F.2d at 623-24. Where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

**C. Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

**V. THE MERITS OF THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant Flores asserts that he should be dismissed from this suit because Plaintiff's Complaint does not allege any wrongdoing by him. (Defs.' Mem. P. & A. 7.) Defendants claim the Complaint alleges only that Flores entered the room and asked "What's going on?" (Id.) Then, Defendants Gonzalez and Torres stopped their

assault, and Flores pushed his personal alarm and watched Arthur on the floor until other staff arrived. (Id.) Defendants argue that "[t]here are no allegations that Defendant Flores joined in the alleged assault, failed to prevent confirmed beatings, or refused to summon help." (Id. at 8.) They maintain that this is insufficient to support an Eighth Amendment claim against Defendant Flores; rather, the allegations show that Flores took action to stop the alleged civil rights violation. (Id. at 7-8.) Plaintiff's Opposition to the Motion to Dismiss does not address this argument.

"A person 'subjects' another to the deprivation of a constitutional right . . . if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citing Sims v. Adams, 537 F.2d 829 (5th Cir. 1976)). Thus, to state a claim for monetary damages under § 1983, Plaintiff must allege that each of the Defendants committed some act, or failed to act in some way, which caused Arthur's alleged injury. See Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (citing Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer, 844 F.2d at 633 (citations omitted).

Plaintiff's Complaint alleges that Defendants Gonzalez and Torres physically attacked him, and Defendant Flores entered the room while the attack was in progress. (See Compl. 4-5.) There is

no allegation that Defendant Flores physically harmed Arthur in any way. Instead, Plaintiff alleges that when Defendant Flores saw what was occurring, he activated his personal alarm to summon other staff members and waited for responding staff to arrive. (Id. at 5.)

"A prison official may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm to an inmate." Estate of Davis v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997) (citations omitted); see also Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000); Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998). Arthur's Complaint, however, does not state a claim against Flores for failure to prevent the attack on Plaintiff; instead, his Complaint alleges that the attack stopped when Flores entered the room, and Flores responded to the attack by calling for additional staff members. (Compl. 5.)

There are no allegations that Defendant Flores knew the attack was going to occur or could have prevented it. See Ting v. United States, 927 F.2d 1504, 1511 (9th Cir. 1991) (finding that officers did not cause plaintiff's injuries where there was no evidence they knew another officer was going to shoot plaintiff, so they could not prevent the shooting). Rather than turning a blind eye to the alleged attack, Plaintiff contends that the beating stopped when Flores asked Gonzalez and Torres, "What's going on?" and pushed his alarm to summon other staff members. (Compl. 5.)

The Court is required to construe all factual allegations in the light most favorable to Plaintiff and to draw all reasonable inferences from the Complaint in his favor. Doe v. United States,

419 F.3d 1058, 1062 (9th Cir. 2005).  But even accepting Arthur's allegations as true, the Court finds that Plaintiff has not stated a claim against Defendant Flores, Defendants' Motion to Dismiss all claims against Defendant Flores should be GRANTED.

## VI. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be **GRANTED** and this action should be **DISMISSED** in its entirety.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **January 18, 2008**.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before **January 31, 2008**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:   December 21, 2007

_____
Ruben B. Brooks
United States Magistrate Judge

cc:   Judge Benitez
      All Parties of Record